UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Heriberto Chavez; Evangelina Escarcega, as the legal representative of her son, Jose Escarcega; and Jorge Moreno, <br><br>       Plaintiffs, <br><br> v. <br><br> Plan Benefit Services, Inc.; Fringe Insurance Benefits, Inc.; and Fringe Benefit Group, <br><br>       Defendants. | Civil Action No. 1:17-cv-659 <br><br> ERISA Class Action |

## CLASS ACTION COMPLAINT

### PRELIMINARY STATEMENT

1.      More than 125,000 workers, most of them in the construction industry, receive pension and welfare benefits through the Contractors and Employees Retirement Trust ("CERT") and the Contractors Plan Trust ("CPT") (collectively, "the Trusts").

2.      Defendants Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc., collectively doing business as Defendant Fringe Benefit Group, provide administrative and marketing services to the Trusts. Defendants charge workers fees for those services on top of the costs of the workers' benefits. Some of these fees are disclosed in agreements between Defendants and the employers that administer the employee benefit plans participating in the Trusts, but others are not. All fees are excessive relative to the minimal services actually provided by Defendants, who have collected tens of millions of dollars from the Trusts during the period at issue in this case.

3.      The Trusts and Defendants are closely related entities: Fringe Benefit Group created and administers the Trusts through its wholly-owned subsidiary, Plan Benefit Services, Inc. Defendants have taken advantage of their control of the Trusts in compensating themselves excessively for services which, on information and belief, cost very little to provide.

4.    The Trusts are explicitly marketed to non-union contractors as a vehicle to get credit for payment of prevailing wages on lucrative public works projects. As a result of Defendants' actions, workers paid more for health care, received less wages, and accrued less retirement savings than they otherwise would have.

5.    By imposing sky-high administrative costs, Defendants enriched themselves at the expense of the Trusts' participating employee benefit plans and the employees who receive their retirement and healthcare benefits through those plans. Plaintiffs seek monetary and appropriate equitable relief on behalf of the class.

## JURISDICTION

6.    Plaintiffs bring this action under ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (3). This Court has subject matter jurisdiction over Plaintiffs' claims under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

7.    Venue lies in the Western District of Texas under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendants may be found in this District and/or the alleged breaches took place in this District. Venue also is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

8.    Plaintiff Heriberto Chavez works 40 hours a week as a floor technician for Training, Rehabilitation & Development Institute, Inc. ("TRDI"). Mr. Chavez resides in El Paso, Texas. He cleans and polishes the floors at the Port of Entry at the border of El Paso and Ciudad Juarez, Mexico. He is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the TRDI Health & Welfare Plan. From August 2014 through some time in 2016, the TRDI Health & Welfare Plan provided benefits through CPT. Mr. Chavez is paid $12.19 an hour for his work. TRDI contributed an additional amount of $3.71 - $4.25 an hour to CPT for his health and welfare benefits.

9.      Plaintiff Evangelina Escarcega is the legal representative of her son, Jose Escarcega, due to his intellectual disabilities. Mr. Escarcega and his mother reside in El Paso, Texas. Mr. Escarcega works part-time as a custodian for TRDI at the Port of Entry at the border of El Paso and Ciudad Juarez, Mexico. Mr. Escarcega was a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the CERT Retirement Plan and the TRDI Health & Welfare Plan. From August 2014 through May 2015, TRDI made contributions to CERT on behalf of Mr. Escarcega. In June 2015, TRDI enrolled Mr. Escarcega in the TRDI Health & Welfare Plan, which provided benefits through CPT until July 2016. CPT covered Mr. Escarcega through a limited medical plan, which provided basic insurance coverage capped at specific amounts for specific services. Mr. Escarcega earns $11.98 an hour as a janitor. TRDI contributed an additional amount of $3.71 to $4.25 an hour to CERT and CPT for his retirement and health and welfare benefits.

10.      Plaintiff Jorge Moreno works part-time as a custodian for TRDI. He resides in El Paso, Texas. He cleans the Port of Entry at the border of El Paso and Ciudad Juarez, Mexico. Mr. Moreno was a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the CERT Retirement Plan and the TRDI Health & Welfare Plan. From August 2014 through May 2015, TRDI made contributions to CERT on behalf of Mr. Moreno. In June 2015, TRDI enrolled Mr. Moreno in the TRDI Health & Welfare Plan, which provided benefits through CPT until July 2016. CPT covered Mr. Moreno through a limited medical plan, which provided basic insurance coverage capped at specific amounts for specific services. Mr. Moreno earns $11.98 an hour as a janitor. TRDI contributed an additional amount of $3.71 to $4.25 an hour to CERT and CPT for his retirement and health and welfare benefits.

11.      Defendant Fringe Benefit Group is the parent company of Defendants Plan Benefit Services, Inc., and Fringe Insurance Benefits, Inc. Fringe Benefit Group is headquartered in Austin, Texas.

12.      Defendant Plan Benefit Services, Inc. is the Administrator of CPT and the Master Plan Sponsor and Recordkeeper of the Contractors and Employees Retirement Plan and Trust

("CERT Master Plan"). It is a wholly-owned subsidiary of Fringe Benefit Group and is located in Austin, Texas.

13.     Defendant Fringe Insurance Benefits, Inc. is an insurance brokerage firm. It is a wholly-owned subsidiary of Fringe Benefit Group located in Austin, Texas.

14.     Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc. are solely owned by Travis West. Mr. West has stated in a sworn declaration that "PBS and FIBI collectively do business as Fringe Benefit Group." All three entities have the same physical address and the same website, and their website states that Fringe Benefit Group "includes" Plan Benefit Services, Inc., Fringe Insurance Benefits, Inc., and The Contractors Plan (which is the umbrella for both the CPT and CERT Trusts). Travis West is the registered agent for service of process for Fringe Benefit Group, Plan Benefit Services, Inc., and Fringe Insurance Benefits, Inc., and the executive team for all three Defendants is, on information and belief, the same.

15.     All Defendants are service providers to the Trusts and to the employee benefit plans participating in the Trusts, and are parties in interest to the employee benefit plans under ERISA § 3(14)(B), 29 U.S.C. § 1002(21)(B).

16.     Plan Benefit Services, Inc. is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), of the employee benefit plans participating in the Trusts. It exercises authority and control respecting management and disposition of the employee benefit plan assets held in the Trusts. On information and belief, it (1) determines the recipients, amounts, and timing of payments made from plan assets to itself and to Fringe Insurance Benefits, Inc., as well as controlling all other disbursements from the Trusts; (2) retains discretionary authority and control to appoint and remove the Trustees, approve compensation for the Trustees, and amend the Master Plan, Master Trust Agreements, and Adoption Agreements without the consent of participating employers; and (3) retains discretionary authority and control to select and remove service providers to the employee benefit plans participating in CERT and CPT, including Plan Benefit Services, Inc. and related party Fringe Insurance Benefits, Inc.

17.     Also on information and belief, under the CERT Master Trust Agreement and Master Plan, Plan Benefit Services, Inc. has the power and responsibility for interpreting the provisions of the Master Plan and preparing and publishing rules and regulations that are not inconsistent with its terms and provisions. It has all powers necessary to determine all questions arising in connection with the administration, interpretation, and application of the Master Plan. Accordingly, Plan Benefit Services, Inc. has exercised discretionary authority and/or discretionary control in the administration of the participating employee benefit plans and has been a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

18.     On information and belief, Fringe Benefits Group has de facto control over Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc., and the three entities are so closely related as to be interchangeable.

**FACTS**

19.     The Fringe Benefit Group was founded as a vehicle for non-union employers to compete for federal, state, and local government contracts. These contracts often require payment of prevailing wages, defined as the wages and benefits paid to the majority of laborers or mechanics in the same job classification on similar projects in the area during the relevant time period.

20.     The Fringe Benefits Group sells the "Contractors Plan," which offers retirement benefits through CERT and welfare benefits through CPT. The Contractors Plan markets itself to employers as a means to making the "leanest bid," saving money on payroll taxes, and avoiding fiduciary liability. While the Plan may save employers money and help them win contracts, the pension and health benefits come at a high cost to the workers because of the excessive fees charged by Defendants.

21.     Through their control of CERT and CPT, as further set forth below, Defendants have received direct and indirect compensation totaling over $100 million from 2010 to 2015.

The Welfare Plan (CPT)

22.     CPT is a multiple-employer welfare arrangement within the meaning of ERISA § 3(40), 29 U.S.C. § 1002(40), and a group insurance arrangement under 29 C.F.R. §§ 2520.104-43.

23.     CPT provides health and other welfare benefits to employees of contractors working on projects covered by state and federal prevailing wage laws. In 2015, CPT had 15,522 end-of-year active participants and 162 participating employers.

24.     Each participating employer's health and welfare plan enters into an Adoption Agreement with Plan Benefit Services, Inc., which is the Master Plan Sponsor and Administrator of CPT. Each of the underlying plans is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

25.     Participants receive health and welfare benefits through the purchase of insurance contracts by their employer's plan, which CPT arranges.

26.     Plan Benefit Services, Inc. does not play any role in paying or processing insurance claims or provider billing, as would a traditional third-party administrator in the health care industry. Pursuant to the Adoption Agreement, Plan Benefit Services, Inc. performs a limited set of services for CPT and the underlying plans including assisting employers with applications for insurance and forwarding the applications to insurers; assisting in soliciting competitive bids from carriers and negotiating renewals with carriers; maintaining a census of covered participants and participant accounting records; transmitting premium payments to insurers; providing a toll-free call center for participants to get information about enrollment and contributions; and filing an IRS Form 5500 for CPT.

27.     In other words, Plan Benefit Services, Inc. simply acts as an intermediary between participating plans and insurers and performs limited recordkeeping functions.

28.     Defendant Fringe Insurance Benefits, Inc. performs undescribed "marketing and sales-related services" for CPT, the nature and scope of which are not defined further in the Adoption Agreement or other materials.

29.     The Adoption Agreement states that Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc. are each paid 5% of the applicable insurance premium for those workers who have general medical benefits, for a total of 10% in fees. For those workers who have limited medical benefits (i.e., basic insurance coverage capped at specific amounts for specific services),

Fringe Insurance Benefits, Inc. is paid 15% of the premiums (with 10% of that amount going to an undefined "agent"), and Plan Benefit Services, Inc. is paid an additional 2% of the premiums, for a total of 17% in fees. Participating employees pay the 10% or 17% fees, depending on the level of medical benefits, to Plan Benefit Services, Inc. and Fringe Insurance Benefits Inc. Schedule C to the Adoption Agreement states that "the plan administrative fees are paid by the plan from the trust and are allocated to participant accounts in proportion to each participant's premiums."

30.     Plans make contributions to CPT, and then Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc. pay themselves before transmitting funds to the insurers.

31.     The Adoption Agreement further states that Plan Benefit Services, Inc. receives indirect compensation from MetLife for administrative services in the amount of 5% of premiums paid to MetLife for insurance offered through the plan.

32.     The Adoption Agreement acknowledges that the Trust "may contain assets from the Employer Plans," and is therefore "governed by ERISA."

33.     Plan Benefit Services, Inc. and Fringe Benefit Services, Inc. pay themselves out of plan assets.

34.     Financial statements of CPT show that participating employers pay an average of 11%-13.5% of contributions in fees for administration and sales.

35.     From 2010 to 2015, CPT paid $32.5 million in fees to Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc.

36.     The fees charged to participants in employee benefits plans provided through CPT are excessive. They are far greater than industry standards and, on information and belief, the fees bear no reasonable relationship to the services provided by Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc.

37.     On information and belief, the "sales and marketing" services of Fringe Insurance Benefits, Inc. are not necessary or reasonable expenses of administering the plans participating in CPT.

The Retirement Plan (CERT)

38.     CERT is a master pension trust, which sponsors a prototype defined contribution plan—the CERT Master Plan—for employees of contractors working on projects covered by state and federal prevailing wage laws.

39.     The CERT Master Plan is adopted by participating employers' retirement plans, each of which is an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

40.     As of 2015, CERT had $770.5 million in assets and 1,716 participating employers.

41.     If the employer so chooses, employees may make contributions to CERT and/or employers may make discretionary profit sharing contributions. Employers may also make "prevailing wage contributions" on behalf of participants who perform work subject to prevailing wage statutes. Prevailing wage requirements can generally be met through a combination of wages and fringe benefits. If the employer does not spend enough on health and welfare benefits to make up the fringe benefits component and thus meet its obligation to pay prevailing wages, the employer may pay the remaining balance into the employee's defined contribution retirement plan account, i.e., into plan accounts held through CERT.

42.     Employee and employer contributions to the participating plans are deposited into the Contractors and Employees Retirement Plan Master Trust, which is governed by a Master Trust Agreement.

43.     On information and belief, the CERT Master Plan and the Master Trust Agreement give Defendant Plan Benefit Services, Inc. broad authority over CERT. This authority includes the right to appoint and remove the Trustee, approve compensation for the Trustee, direct the Trustee to make payments to such persons and at such times and in such amounts as Plan Benefit Services, Inc. shall direct, and amend the Master Plan, Master Trust Agreement, and Adoption Agreement without the consent of participating employers.

44.     In addition, Plan Benefit Services, Inc. performs recordkeeping and administrative services for the master trust and participating plans.

45.     Plan Benefit Services, Inc. also receives contributions to the Trust. American National Bank of Texas Trust serves as the Trustee of CERT, and in that capacity, it holds the assets of the Trust and pays benefits to participants and beneficiaries.

46.     Plan Benefit Services, Inc. charges participating plans a monthly administrative fee that is a percentage of the total plan assets. The percentage varies based on the size of the plan (in terms of total assets). The smallest plans, with $0 to $149,999 in assets, are charged 1.35% for the services of Plan Benefit Services, Inc.; plans with $150,000 to $299,999 are charged 1.25%; plans with $300,000 to $499,999 are charged 1.15%; plans with $500,000 to $699,999 are charged 0.85%; plans with $700,000 to $899,999 are charged 0.60%; plans with $900,000 to $1,199,999 are charged 0.20%; plans with $1.2 million to $1,499,999 are charged 0.15%; and plans with at least $3 million in total assets are not charged the administrative fee and receive a credit of 0.15% to offset other expenses.

47.     In addition, Plan Benefit Services, Inc. charges an annual fee of $200 per plan and a monthly participant administrative fee of up to $6.50 per participant, depending on the number of participants in the plan. Plan Benefit Services, Inc. collects "surrender charges" when a plan terminates its investment in CERT and fees for various specific services, such as participant loan processing. The Retainer Agreement between a plan and Plan Benefit Services, Inc. also makes reference to a "Monthly Investment Provider Charge," the amount and ultimate recipient of which is unspecified.

48.     The Retainer Agreement states that the monthly participant administrative fees are deducted from participants' accounts directly and the monthly plan administrative fees are "paid by the plan from the trust and are allocated to participant accounts in proportion to each participant's assets."

49.     The Retainer Agreement further provides that Plan Benefit Services, Inc. "and its affiliate" may employ brokers to assist in marketing the plans and performing the administrative functions delegated to Plan Benefit Services, Inc. in exchange for a portion of the fees. On information and belief, Fringe Insurance Benefits, Inc. is the affiliate that receives fees paid out of

plan assets in the Trust. On information and belief, Plan Benefit Services, Inc. retains the authority to engage or remove Fringe Insurance Benefits, Inc. as a service provider to the employee benefit plans participating in CERT.

50.     In addition to direct fees, Defendants receive indirect compensation from Nationwide, an investment provider to CERT. The Retainer Agreement states that Plan Benefit Services, Inc. receives payment in the amount of 0.80% of assets in all plan investments at Nationwide, and Fringe Insurance Benefits, Inc. receives 0.35%.

51.     Not all investments available to participating plans through CERT are offered by Nationwide. Defendants also receive indirect compensation from Transamerica Life Insurance Company, another investment provider to CERT. On information and belief, Plan Benefit Services, Inc. and/or Fringe Insurance Benefits, Inc. receive payments from other investment providers as well.

52.     The Retainer Agreement does not specify what services, if any, Fringe Insurance Benefits, Inc. performs for CERT. On information and belief, it does not perform any services necessary to the operation of CERT.

53.     From 2010 to 2015, Plan Benefit Services, Inc. was paid $35 million in direct fees and $14.5 million in indirect fees for its services to CERT. In the same timeframe, Fringe Insurance Benefits, Inc. was paid $23.7 million in indirect fees for its services to CERT, for a combined total of $88.2 million.

54.     From 2010 to 2015, direct and indirect fees to Plan Benefit Services, Inc. and Fringe Insurance Benefits, Inc. averaged about 2% of CERT's total pension plan assets.

55.     The above-described fees include recordkeeping and other administrative services only, in addition to payments made to Defendants from investment providers. In other words, they are exclusive of the investment fees charged to participants in CERT by providers of particular investment products.

56.     Defendants' fees far exceed industry standards and bear little relationship to the services they are providing to CERT. A study by Deloitte found that the average "all in" (i.e.,

administrative and investment) fee paid by participants and/or sponsors of defined contribution pension plans was 1.17% of assets for plans with $1 to $10 million in assets, 0.89% of assets for plans with $10 to $100 million in assets, 0.63% of assets for plans with $100 to $500 million in assets, and 0.41% for plans with over $500 million in assets. Even assuming that most of the participating plans in CERT are small, fees averaging 2% exclusive of investment fees are grossly excessive.

57.     For participants whose employers elected to make prevailing wage contributions to CERT, retirement contributions were reduced based on excessive fees charged to the health and welfare plans. Had Defendants not charged excessive fees to the plans participating in CPT, thus increasing the amount that employers spent on health and welfare benefits, the employers would have had to contribute more to CERT to make up the balance of the fringe benefit portion of their prevailing wage obligations.

### CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons ("the Class"): All participants in and beneficiaries of CPT and CERT, other than officers and directors of the Defendants and their immediate family members, from six years before the filing of this action until the time of trial.

59.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are, at a minimum, thousands of Class members.

60.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among such common questions are:

(a) Whether Defendants are parties in interest with respect to the plans that participate in the Trusts;

(b) Whether Defendants have fiduciary duties to the plans that participate in the Trusts;

(c) Whether Defendants have fiduciary duties to the Trusts themselves;

(d) Whether the compensation paid to Defendants in connection with their services to the plans and/or the Trusts is unreasonable or excessive;

(e) Whether Defendants have knowingly participated in direct sales or exchanges with participating plans and/or transferred or used plan assets for their own benefit.

61.     There are no substantial individual questions among the Class claims on the merits of this action, and Plaintiffs are not aware of any conflicts between themselves and members of the putative Class.

62.     Plaintiffs' claims are typical of the claims of the members of the putative Class, as Plaintiffs and all other members of the putative Class were harmed by Defendants' wrongful conduct. Plaintiffs are aggrieved by the prohibited transactions and breaches of fiduciary duties they and all other members of the Class have suffered at Defendants' hands, and are intent on seeing such wrongs remedied. Neither Plaintiffs nor their counsel have any interests that might cause them to refrain from vigorously pursuing the claims in this class action. Thus, Plaintiffs are adequate representatives of the Class.

63.     Class certification of Plaintiffs' Claims for Relief is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

64.     In the alternative, class certification of Plaintiffs' Claims for Relief also is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants have obtained wrongful profits through overcharges that are, on an individual level, small and difficult to detect but

in the aggregate have an enormous impact on the value of Class members' employee benefits. Individual participants, and even most plans, have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

65.     On information and belief, the Class is easily ascertainable because the names and addresses of the Class members are available from Defendants, and adequate notice can be provided to members of the Class to the extent required by Fed. R. Civ. P. 23.

66.     Plaintiffs are committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the Class, and have retained counsel competent and experienced in class action litigation of this nature for this purpose. Thus, the requirements of Rule 23(g) are met.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**[In Defendants' Capacities as Parties in Interest, Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against All Defendants]**

67.     Plaintiffs incorporate Paragraphs 1-66 as though set forth herein.

68.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

69.     ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), defines any person providing services to an employee benefit plan as a party in interest.

70.     Defendants provide, *inter alia*, administrative, recordkeeping, and marketing services to the participating plans in the Trusts. Accordingly, Defendants are parties in interest with respect to the plans.

71.     Defendants pay themselves fees out of plan assets held in the Trusts.

72.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA.

73.     By contracting with Defendants and paying their fees out of plan assets, the participating plans' fiduciaries violated ERISA § 406(a), 29 U.S.C. § 1106(a), by causing a direct sale or exchange with a party in interest and/or a transfer or use of plan assets to or by or for the benefit of parties in interest, namely, Defendants.

74.     Defendants knowingly participated in such prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

75.     Through their knowing participation in prohibited transactions, Defendants profited in amounts to be proven at trial but numbering in the millions of dollars.

SECOND CLAIM FOR RELIEF<br>[Engaging in Prohibited Transactions Forbidden by ERISA § 406(b),<br>29 U.S.C. § 1106(b), Against All Defendants]

76.     Plaintiff incorporates Paragraphs 1-75 as though set forth herein.

77.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

78.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), mandates that a plan fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

79.     ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

80.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

81.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

82.    Plan Benefit Services, Inc. was a fiduciary of the plans that participated in CERT and CPT, as set forth in Paragraphs 16-17 above.

83.    Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by hiring themselves to perform services to the plans, by paying themselves excessive compensation out of plan assets, by arranging for excessive compensation to themselves from other service providers to the plans, and by knowingly participating in Plan Benefit Services, Inc.'s self-dealing with the plans.

84.    Through these prohibited transactions, Defendants caused losses to the plans in amounts to be proven at trial but numbering in the millions of dollars.

### THIRD CLAIM FOR RELIEF
### [Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3), Against All Defendants]

85.    Plaintiff incorporates Paragraphs 1-84 as though set forth herein.

86.    ERISA § 3(21), 29 U.S.C. § 1001(21), provides that a person is a fiduciary of a plan to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan," "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan."

87.    Plan Benefit Services, Inc. is a fiduciary of the plans participating in CPT and CERT as set forth in paragraphs 16-17 above.

88.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

89.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the Court may deem appropriate.

90.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

91.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

92.     Plan Benefit Services, Inc. breached its duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). Plan Benefit Services, Inc.'s breaches include but are not limited to the following: hiring itself and its affiliates to perform services for the plans at excessive costs; paying itself and its affiliates excessive compensation from plan assets; and, on information and belief, paying itself and its affiliates extracontractual fees and determining in their discretion the amount of said fees and failing to disclose said fees to participants,

93.     Defendants are liable under ERISA § 502(a)(3) for knowingly participating in Plan Benefit Services, Inc.'s breaches of fiduciary duty.

94.     Defendants have profited from the fiduciary violations alleged herein in an amount to be proven at trial.

95.     Defendants' actions caused losses to the plans in an amount to be proven at trial.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray as follows:

**As to the First Claim for Relief:**

A.     Certify this action as a class action under Federal Rule of Civil Procedure 23;

B.      Declare that Defendants have knowingly participated in prohibited transactions and violated ERISA in their capacity as parties in interest to the plans;

C.      Enjoin Defendants from engaging in further prohibited transactions;

D.      Order Defendants to disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

E.      Order that Defendants provide other appropriate equitable relief to the plans, including but not limited to restitution and an accounting for profits;

F.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G.      Order Defendants to pay prejudgment interest; and

H.      Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A.      Certify this action as a class action under Federal Rule of Civil Procedure 23;

B.      Declare that Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the plans in their own interest or for their own account or by knowingly participating in such self-dealing;

C.      Enjoin Defendants from further prohibited transactions;

D.      Order Defendants to disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

E.      Order that Defendants provide other appropriate equitable relief to the plans, including but not limited to restitution and an accounting for profits;

F.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G.      Order Defendants to pay prejudgment interest; and

H.      Award such other and further relief as the Court deems equitable and just.

**As to the Third Claim for Relief:**

  A.  Certify this action as a class action under Federal Rule of Civil Procedure 23;

  B.  Declare that Defendants have breached their fiduciary responsibilities to the Class and knowingly participated in breaches of fiduciary responsibility to the Class;

  C.  Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties;

  D.  Order Defendant Plan Benefit Services, Inc. to make good to the plans the losses resulting from these fiduciary violations;

  E.  Order that Defendants provide other appropriate equitable relief to the plans, including, but not limited to, surcharge, restitution, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants, or ordering Defendants to disgorge any profits that they have made through breaches of fiduciary duty;

  F.  Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein under ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

  G.  Order Defendants to pay prejudgment interest; and

  H.  Award such other and further relief as the Court deems equitable and just.

Dated: July 6, 2017          Respectfully submitted,

           BRUCKNER BURCH PLLC

             **/s/ Rex Burch**
           By: _____
             Richard J. (Rex) Burch
             Texas Bar No. 24001807
           8 Greenway Plaza, Suite 1500
           Houston, TX 77046
           Telephone: (713) 877-8788
           Facsimile: (713) 877-8065
           rburch@brucknerburch.com

           Catha Worthman*
           Nina Wasow*
           FEINBERG, JACKSON, WORTHMAN, & WASOW, LLP
           383 4th Street

Oakland, California 94607
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
catha@feinbergjackson.com
nina@feinbergjackson.com

Jonathan Weissglass*
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
jweissglass@altshulerberzon.com

*Attorneys for Plaintiff*

*Pro hac vice* application forthcoming