IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

HERIBERTO CHAVEZ, EVANGELINA
ESCARCEGA as legal representative of
JOSE ESCARCEGA, and JORGE
MORENO
        **Plaintiffs,**

-vs-

PLAN BENEFIT SERVICES, INC.,
FRINGE INSURANCE BENEFITS, INC.,
and FRINGE BENEFIT GROUP,
        **Defendants.**

CAUSE NO.:
AU-17-CA-00659-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Dismiss [#56], Plaintiffs' Response [#63] in opposition, and Defendants' Reply [#65] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and order.

**Background**

Plaintiffs Heriberto Chavez, Evangelina Escarcega on behalf of her disabled son Jose Escarcega, and Jorge Moreno bring this action on behalf of themselves and a proposed class of similarly situated participants and beneficiaries under the Employee Retirement Income Security Act of 1974 (ERISA) against Defendants Fringe Insurance Benefits, Inc., Plan Benefit Services, Inc., and Fringe Benefit Group (Defendants). Am. Compl. [#42] at 1.

Defendants market and administer retirement, health, and welfare benefit plans to the employees of nonunion employers seeking to compete for government contracts. *Id.* at 10. Nonunion employers seeking to bid on such government contracts are often required to pay their

1

workers "prevailing wages"—the wages and benefits paid to the majority of similarly situated laborers in the area during the relevant time period—in order to qualify for government contracts. *Id.* at 10. Defendants offer a "Contractors Plan" to such employers through which the employers can affordably provide retirement, health, and welfare benefits to their workers and thereby submit competitive bids for government work. *Id.* at 10; Resp. [#63] at 3.

Once they have enrolled in the Contractors Plan, employers can offer retirement benefit plans to their employees through the Contractors and Employee Retirement Trust (CERT) and can offer health and welfare benefit plans to their employees through the Contractors Plan Trust (CPT). Am. Compl. [#42] at 1, 10; Resp. [#63] at 3. CERT is a "master pension trust, which sponsors a prototype defined contribution plan" for employees, while CPT is a multiple-employer trust that serves as a vehicle for marketing, administering, and funding the provision of health and welfare benefits to employees. Am. Compl. [#42] at 10–11. Defendants serve as Master Plan Sponsor and Recordkeeper for both CPT and CERT. Am. Compl. [#42] at 8–13. In their capacity as Master Plan Sponsor, Defendants entered into trust agreements with institutional trust companies for both CPT and CERT. American National Bank of Texas Trust Division (ANB) served as Trustee of CERT from June 2, 2014 until July 1, 2016, when it was replaced by Pentegra Trust Company (Pentegra). Mot. Dismiss [#56-7] Attach. G (ANB Master Trust Agreement) at 10; *id.* [#56-8] Attach. H (Pentegra Master Trust Agreement) at 10. Pentegra currently serves as the Trustee of both CPT and CERT. Am. Compl. [#42] at 11.

Plaintiffs' employer, Training, Rehabilitation & Development Institute, Inc. (TRDI) enrolled in Defendants' Contractors Plan to facilitate the provision of retirement benefits as well as health and welfare benefits to TRDI employees. *Id.* at 1–2; Resp. [#63] at 3. Upon enrolling in the Contractors Plan, TRDI established a health and welfare plan (TRDI Health and Welfare

Plan) and a retirement plan (TRDI Retirement Plan) by executing adoption agreements with CPT and CERT, respectively. Am. Compl. [#42] at 11; Mot. Dismiss [#56-1] Attach. A (CPT Adoption Agreement); *id.* [#56-2] Attach. B. (CERT Adoption Agreement).

The documents governing CERT, CPT, and the TRDI plans distribute various responsibilities and duties among TRDI, the Trustee, and Defendants. Relevant here, Plaintiffs allege Defendants possessed the ability to (1) control disbursements from the trusts and direct the Trustee to make disbursements, including for Defendants' own fees; (2) select the investment platform options made available to employers;[1] (3) appoint and remove the Trustee; and (4) select and remove service providers. Am. Compl. [#42] at 9–10.

Plaintiffs

Plaintiff Heriberto Chavez is employed by TRDI and was a participant in the TRDI Health and Welfare Plan.[2] Am. Compl. [#42] at 4–5. For every hour Chavez worked for TRDI, TRDI contributed a certain amount of money to a fringe benefit account. *Id.* This fringe benefit account was used to help pay Chavez's premiums incurred through his enrollment in health and welfare plans provided through TRDI. *Id.*

---

[1] Defendants argue Plaintiffs' allegations regarding ability to influence the menu of investment options made available to TRDI are contradicted by the Master Trust Agreements. Reply [#65] at 2. However, at least under the Pentegra Master Trust Agreement, Defendants retained the ability to "make available various insurance company or custodial platforms" for the purpose of investing trust assets. Pentegra Master Trust Agreement at 3. Moreover, plan documents indicate Defendants received indirect compensation with respect to both CERT and CPT for promoting the services and products of various insurance and investment companies. Mot. Dismiss [#56-4] Attach. D (TRDI Retirement Plan Retainer Agreement) at 16; CPT Adoption Agreement at 18. Finally, though the trust documents grant the Trustee some measure of authority to select and approve investments, Defendants nevertheless retained the ability to appoint and the Trustees. *See, e.g.*, Pentegra Master Trust Agreement at 8. Plaintiffs' allegations, when viewed in conjunction with plan documents, suggest Defendants retained at least some measure of control or influence over the menu of insurance and investment products made available to the TRDI plans. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (noting Court must resolve all reasonable inferences in favor of the nonmoving party in considering motion to dismiss).

[2] Plaintiffs' complaint does not specify the dates during which Chavez was enrolled in the TRDI Health and Welfare Plan, though it does suggest TRDI ceased to provide benefits through CPT sometime in 2016. Am. Compl. [#42] at 5.

3

Fees charged by Defendants in connection with the administration of Chavez's account were deducted directly from Mr. Chavez's account. *Id.* Though Chavez did not make any contributions to the TRDI Retirement Plan, Plaintiffs contend contributions should have been made to the plan on Chavez's behalf because excess funds in Chavez's account were supposed to be contributed to an individual CERT retirement account in his name. *Id.* Plaintiffs allege Chavez received no such contribution because of the excessive fees charged by Defendants. *Id.*

Jose Escarcega and Jorge Moreno are employed part-time as custodians for TRDI. *Id.* at 6–8. From August 2014 through May 2015, Escarcega and Moreno were participants in the TRDI Retirement Plan, and from June 2015 through July 2016, they were participants in the TRDI Health and Welfare Plan. *Id.* For every hour Escarcega and Moreno worked, TRDI made contributions to their fringe benefit accounts under either the TRDI Retirement Plan or the TRDI Health and Welfare Plan. *Id.* With respect to both plans, Defendants' fees for plan administration services were subtracted from Escarcega and Moreno's individual accounts. *Id.* Plaintiffs allege that if Defendants had not charged excessive fees, Escarcega and Moreno would have accrued greater retirement savings in their accounts. *Id.*

<u>Procedural Posture</u>

In July 2017, Plaintiffs filed this suit against Defendants in federal court alleging violations of ERISA. Compl. [#1]. In October 2017, Defendants filed a motion to dismiss Plaintiffs' original complaint, which the Court granted. Mot Dismiss [#27]; Order of November 6, 2017 [#36]. Plaintiffs subsequently filed an amended complaint. Am. Compl. [#42]. Defendants now move to dismiss Plaintiffs amended complaint. Mot. Dismiss [#56]. This pending motion is ripe for review.

## Analysis

I.   **Legal Standard**

The Federal Rules of Civil Procedure require each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include sufficient factual allegations, accepted as true, to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). While all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman*, 14 F.3d at 1067. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the

complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

Plaintiffs bring three claims: a prohibited transactions claim under 29 U.S.C. § 1106(a), a prohibited transactions claim under 29 U.S.C. § 1106(b), and a claim for breach of fiduciary duties owed under 29 U.S.C. § 1104(a). Am. Compl. [#42] at 22–25. Defendants argue Plaintiffs have (1) failed to state a prohibited transactions claim under § 1106(a); (2) failed to state a prohibited transactions claim under § 1106(b) or a claim for breach of fiduciary duties owed under § 1104(a); (3) lack statutory standing to pursue some of the asserted claims; and (4) lack constitutional standing to pursue some of the asserted claims. The Court addresses each of these arguments in turn.

### A. Prohibited Transaction Under Section 1106(a)

Plaintiffs' first claim seeks equitable relief from Defendants for plan fiduciaries' alleged violations of 29 U.S.C. § 1106(a). Under § 1106(a), a plan fiduciary may not cause the plan to engage in a transaction if the fiduciary knows or should know such transaction constitutes a "direct or indirect sale or exchange" of property "between the plan and a party in interest" or a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."[3] Parties in interest include "any fiduciary . . . of an employee benefit plan" as well as all service providers to the plan. *Id.* § 1002(14)(B).

Plaintiffs allege Defendants qualify as parties in interest and further allege plan fiduciaries violated § 1106(a) by paying the fees charged by Defendants for the provision of

---

[3] The prohibitions set forth in § 1106 are somewhat attenuated by § 1108. Section 1108 provides an affirmative defense for certain transactions exempted from the scope of § 1106. *See, e.g.*, 29 U.S.C. § 1108(b) ("Contracting or making reasonable arrangements with a party in interest [for various services] necessary for the establishment or operation of the plan[] [does not qualify as a prohibited transaction under § 1106] if no more than reasonable compensation is paid therefor.").

6

administrative services. Am. Compl. [#42] at 22–23; Resp. [#63] at 11. On this basis, Plaintiffs seek to disgorge profits earned by Defendants and impose a constructive trust on any funds received by Defendants in the course of the allegedly prohibited transactions.[4] Am. Compl. [#42] at 25. Defendants, meanwhile, argue Plaintiffs' claims under § 1106(a) fail because Plaintiffs have not pled facts showing (1) Defendants were parties in interest, or (2) Defendants' collection of contractual fees qualifies as a prohibited "transaction" within the meaning of § 1106.[5] The Court addresses these arguments in turn.

### 1. Party in Interest

Defendants argue they were not parties in interest during the initial contract negotiations with TRDI because party-in-interest status is not established until after the first arrangement or contract to provide services to the plan. Mot. Dismiss [#56] at 14–15. In response, Plaintiffs agree but clarify their claims under § 1106(a) relate "entirely to Defendants' conduct *after* entering into agreements to provide services to the plans." Resp. [#63] at 8–9. Because the parties agree that Defendants only became parties in interest after the contracts were signed, no further resolution of this issue is required.

### 2. Prohibited Transaction

Section 1106(a) delineates certain "prohibited transactions" that constitute per se violations of ERISA. As an initial matter, both parties agree a service provider does not engage in a prohibited transaction when it initially contracts to provide administrative services to an ERISA plan. *See* Resp. [#62] at 11. Plaintiffs contend, however, that while the initial act of

---

[4] Though fiduciaries are directly liable under § 1106(a), parties in interest are not. However, under 29 U.S.C. § 1132(a)(3), plaintiffs can seek "appropriate equitable relief" from parties in interest for violations of § 1106(a). *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246, 249–251 (2000).

[5] Because the Court concludes Plaintiffs have failed to identify a prohibited transaction under § 1106(a), the Court does not reach Defendants' additional arguments regarding whether the fees charged were excessive or whether Plaintiffs were required to plead TRDI had actual or constructive knowledge of the allegedly excessive fees. Mot. Dismiss [#54] at 15–16.

contracting for services does not qualify as a prohibited transaction, subsequent payment for those services under the terms of that contract should qualify as a separate, prohibited transaction under § 1106(a). Resp. [#62] at 10–11. In this vein, Plaintiffs argue TRDI, ANB, and Pentegra, in their capacity as plan fiduciaries, engaged in prohibited transactions when they paid Defendants' fees according to the terms of preexisting contracts between TRDI and Defendants for the provision of plan administration services. Resp. [#63] at 10–11; *see also* Am. Compl. [#42] at 22 ("By transacting with Defendants and paying their fees out of plan assets, the participating plans' fiduciaries violated [§ 1106(a)]."). In turn, Defendants argue the payment of fees pursuant to the terms of a preexisting contract does not qualify as a "transaction" under § 1106. Reply [#65] at 3–8.

The Court agrees with Defendants that neither TRDI nor the Trustees caused the TRDI plans to engage in separate "transactions" within the meaning of § 1106(a) when they paid Defendants fees pursuant to the initial contracts between the parties. Rather, the relevant "transaction" in these circumstances is the initial act of contracting between the plan fiduciary and the service provider. *Cf. Sacerdote v. New York University*, No. 16-cv-6284, 2017 WL 3701482, at *13–14 (S.D.N.Y. Aug. 25, 2017) ("Depending on the circumstances, overpayment of fees may be an issue under other provisions of ERISA, but a payment for services rendered cannot be a "prohibited transaction.");[6] *Santomenno*, 883 F.3d at 841 ("[W]hen a service provider's definitively calculable and nondiscretionary compensation is clearly set forth in a

---

[6] As Judge Forrest further explains, "it would be nonsensical to read [§ 1106(a)(1)(A)]'s prescription on the transfer of property to include the revenue sharing or fee payments from plan investments to recordkeepers, as such an interpretation would mean plan beneficiaries and participants can make out a prima facie case for prohibited transactions every time a recordkeeper is compensated for its services—which the plan fiduciary would then have to contest in court by affirmatively pleading and providing, under [§ 1108], that the fee payments and revenue sharing payments were no more than reasonable compensation." *Id.* (internal quotation marks omitted). Though Judge Forrest's analysis above relates specifically to [§ 1106(a)(1)(A)], it is equally applicable to claims brought under [§ 1106(a)(1)(C)]. *See id.* ("[I]t is circular to suggest that an entity which becomes a party in interest by providing services to the Plans has engaged in a prohibited transaction simply because the Plans have paid for those services.").

contract with the fiduciary-employer, collection of fees out of plan funds in strict adherence to that contractual term is not a breach of the provider's fiduciary duty."). Because neither the initial contract between the plan fiduciaries and Defendants nor the subsequent payment of fees to Defendants pursuant to that contract qualify as prohibited transactions under § 1106(a), Plaintiffs have failed to identify a prohibited transaction. Accordingly, Plaintiffs have failed to state a claim under § 1106(a) and the Court therefore grants Defendants' motion to dismiss with respect to Plaintiffs' claims under § 1106(a).

### B. Prohibited Transaction Under Section 1106(b) and Breach of Duty of Fiduciary Duties Owed Under 29 U.S.C. § 1104(a)

Plaintiffs' second and third claims for relief allege Defendants—while acting as fiduciaries—engaged in prohibited self-dealing in violation of 29 U.S.C. § 1106(b) and breached fiduciary duties owed to plan participants and beneficiaries under 29 U.S.C. § 1104(a). Am. Compl. [#42] at 23–25. Defendants argue these claims fail because Plaintiffs have not shown Defendants were acting as fiduciaries when they undertook these alleged actions. Mot. Dismiss [#56] at 16–22. Additionally, Defendants argue they cannot be fiduciaries because TRDI retained "final authority and control" over the fees paid to Defendants as well as the hiring of Defendants as service providers to the plan. *Id.*

A person qualifies as a fiduciary under ERISA if they (1) exercise discretionary authority or control respecting management of the plan; (2) exercise any authority or control respecting management or disposition of its assets; or (3) have discretionary authority or responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A). The "threshold question" is whether the alleged fiduciary was "performing a fiduciary function" when taking the action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (noting a person qualifies as a fiduciary only to the extent they "act[] in such a capacity in relation to the plan").

9

Plaintiffs' self-dealing and breach of fiduciary duty claims survive because Plaintiffs have pled sufficient facts to indicate Defendants served a fiduciary function with respect to at least some of the actions complained of by Plaintiffs. For example, Plaintiffs allege Defendants controlled disbursements from both CPT and CERT and directed the Trustees with respect to disbursements from the Trust, including for Defendants' own fees. Am. Compl. [#42] at 9–11. Further, Plaintiffs allege Defendants used this control to collect extracontractual fees that were never disclosed to plan participants. Am. Compl. [#42] at 25. If true, these allegations are sufficient to support finding Defendants acted in a fiduciary capacity by exercising authority or control over the management and disposition of plan assets. *See* 29 U.S.C. § 1002(21)(A)(emphasizing the exercise of "any" authority or control over plan assets implicates fiduciary duties); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419–21 (9th Cir. 1997) ("The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary.").

Plaintiffs also allege Defendants possessed discretion to select and make available to the TRDI Retirement Plan "various platforms for investment of plan assets." Am. Compl. [#42] at 15; *see also* Pentegra Master Trust Agreement at 3 ("The Recordkeeper, with the consent of the Trustee, may make available various insurance company or custodial platforms . . . ."). According to Plaintiffs, Defendants used this discretion "to only make available investment providers" that would maximize Defendants indirect compensation. Resp. [#63] at 20; Am. Compl. [#42] at 17, 23. Plaintiffs contend Defendants received a total of $38.2 million in indirect compensation from Nationwide and Transamerica Life Insurance Company for promoting the

use of Nationwide and Transamerica products. Am. Compl. [#42] at 17; TRDI Retirement Plan Retainer Agreement at 16 (stating Defendants receive indirect compensation from Nationwide for "utilizing Nationwide Investment products" and "based on the assets in all plan investments at Nationwide"). If Defendants exercised discretion in assembling or influencing the menu of investment options made available to the plans to maximize indirect compensation from investment advisors, then Defendants qualify as fiduciaries with respect to those actions.

Finally, in spite of the allegations detailed above, Defendants argue they cannot qualify as fiduciaries because TRDI retained "final authority and control" over the fees paid to Defendants as well as the hiring of Defendants as service providers to the plan. *Id.* This argument misses the mark. The proper inquiries under § 1002 are whether Defendants "exercise[d] *any* discretionary authority or discretionary control" over the management or administration of the plans or "*any* authority or control respecting management or disposition" of plan assets. 29 U.S.C. § 1002(21)(A). Seen in this light, TRDI's alleged "final authority and control" is irrelevant because it does not preclude the exercise of discretionary authority or control by Defendants. Furthermore, ERISA explicitly contemplates that two fiduciaries may exist simultaneously. *See* 29 U.S.C. § 1105 (providing for liability for breaches of co-fiduciaries). The Court therefore concludes TRDI's fiduciary status does not preclude finding Defendants acted in a fiduciary capacity with respect to the TRDI plans.

In sum, Plaintiffs have plausibly alleged Defendants acted in a fiduciary capacity when carrying out at least some of the actions complained of by Plaintiffs. Accordingly, the Court denies Defendants' motion to dismiss with respect to Plaintiffs' claims for prohibited self-dealing in violation of 29 U.S.C. § 1106(b) and breach of fiduciary duties under 29 U.S.C. § 1104(a).

## C. Statutory Standing[7]

Defendants contend Plaintiffs lack statutory standing to bring some of their claims. Mot. Dismiss [#56] at 22–23. Specifically, Defendants contend (1) Plaintiffs lack statutory standing to bring claims in connection with the TRDI Health and Welfare Plan, and (2) Chavez lacks statutory standing with respect to the TRDI Retirement Plan because his status as a participant is based on "two allegations . . . [that] cannot be litigated because he lacks standing." Mot. Dismiss [#56] at 23.[8]

### 1. TRDI Health and Welfare Plan

Plaintiffs have standing to bring their ERISA claims if they qualify as "participants." *See* 29 U.S.C. § 1132(a)(1)-(3). Under the factual circumstances presented here, Plaintiffs qualify as participants under § 1132 if they have a "colorable claim to vested benefits." *Coleman v. Champion Int'l Corp.*, 992 F.2d 530, 533–36 (5th Cir. 1993). Defendants argue Plaintiffs do not qualify as participants in the TRDI Health and Welfare Plan because they have not alleged they were wrongly denied a benefit. Mot. Dismiss [#56] at 22–23.

The Court finds Plaintiffs have pled sufficient facts to establish statutory standing with respect to the TRDI Health and Welfare Plan. Plaintiffs allege they had individual welfare accounts under the TRDI Health and Welfare Plan and suffered losses as a result of Defendants' wrongful actions. Am. Compl. [#42] at 5, 13; Resp. [#63] at 24–25. Though Defendants argue Plaintiffs' complaint "nowhere alleges that Plaintiffs were wrongly denied a benefit due," Defendants do not explain why the alleged losses suffered by these individual accounts should

---

[7] Motions to dismiss for lack of statutory standing are evaluated under Rule 12(b)(6). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).").

[8] Defendants concede Moreno and Escarcega "likely" have statutory standing to raise their claims in connection with the TRDI Retirement Plan. *Id.*

not be considered "vested benefits" due to Plaintiffs and sufficient to secure Plaintiffs' standing as "participants" under ERISA.[9] Reply [#65] at 10. Moreover, while Defendants argue the individual accounts alleged by Plaintiffs are "bookkeeping accounts" and do not exist, Reply [#65] at 10, at the motion to dismiss stage, the Court must accept Plaintiffs' allegations as true. *Gonzalez*, 577 F.3d at 603. Accordingly, the Court finds Plaintiffs possess statutory standing to pursue their claims with respect to the TRDI Health and Welfare Plan.

### 2. TRDI Retirement Plan

Defendants argue Chavez lacks statutory standing to bring claims with respect to the TRDI Retirement Plan because his participation in the plan is "based on two allegations that have yet to be proved and cannot be litigated because he lacks standing." Mot. Dismiss [#56] at 23. This elliptical argument makes no sense, and Defendants have provided no legal authority in support. Moreover, Defendants have not explained in why the allegations supporting Chavez's assertion of statutory standing are otherwise inadequate. As a result, the Court at this time lacks any basis for concluding Chavez lacks statutory standing.

### D. Constitutional Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and

---

[9] Several Fifth Circuit cases have held a plaintiff only qualifies as a "participant" under § 1132 if the plaintiff is seeking to recover "benefits," as opposed to "damages." *See, e.g., Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989). This distinction is less than clear. *See Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 298–99 (3d Cir. 2007) (arguing the dichotomy between benefits and damages suffers from "confusing overlap," "breaks down" upon closer inspection, "appears nowhere in the statute," and is "[un]necessary to explain the outcomes reached by this line of jurisprudence"); *see also Sommers*, 883 F.2d at 349 ("The distinction between 'benefits' and 'damages' is not clear."). Neither party has adequately addressed this distinction in the briefing, and the Court does not address it here.

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendants argue Plaintiffs lack constitutional standing to bring claims concerning the TRDI Health and Welfare Plan because (1) Plaintiffs alleged injury is speculative, and (2) Plaintiffs' alleged injury is not likely to be redressed by a favorable court decision. Mot. Dismiss [#56] at 24–25. Both of Defendants' arguments fail. The Court concludes all three Plaintiffs possess constitutional standing to bring claims related to the TRDI Health and Welfare Plan.

First, Plaintiffs' injury is not speculative. Plaintiffs allege their individual welfare accounts suffered losses as a result of Defendants' wrongful actions and, if the fees and expenses charged under the TRDI Health & Welfare Plan had been lower, prevailing wage laws would have obligated TRDI to pass on these savings to plan participants in the form of either additional hourly wages or increased retirement benefits. Am. Compl. [#42] at 5, 13. This alleged deprivation of benefits due to Plaintiffs is a concrete and particularized injury, and aside from blankly asserting Plaintiffs' injury is "speculative," Defendants have not offered any explanation or argument in support of their position. Mot. Dismiss [#56] at 24–25. The Court thus finds Plaintiffs have suffered an injury in fact.

Second, Plaintiffs' injury appears to be redressable. Plaintiffs contend that if Defendants had not breached their fiduciary duties, the fees and expenses charged under the TRDI Health & Welfare Plan would have been lower. And, Plaintiffs contend, if the fees and expenses charged under the TRDI Health & Welfare Plan had been lower, prevailing wage laws would have obligated TRDI to pass on these savings to plan participants in the form of either additional hourly wages or increased retirement benefits. Reply [#63] at 27; *see also* TRDI Retirement Plan Retainer Agreement at 2 ("Prevailing Wage Contributions must be made for all hours worked on a covered project .... It is the Employer's option to pay straight cash wages or a combination of cash wages and fringe benefits to satisfy the wage determination ....").

Plaintiffs now seek to disgorge from Defendants and deposit in a constructive trust the monetary sums which Plaintiffs claim were rightfully due to them under prevailing wage laws and plan documents. It seems obvious that this monetary injury allegedly suffered by Plaintiffs could be redressed by requiring Defendants to disgorge any gains secured through a breach of fiduciary duty,[10] and the Court concludes Plaintiffs' injury is redressable.

## Conclusion

The Court (1) concludes Plaintiffs have constitutional standing to pursue their claims; (2) grants Defendants' motion to dismiss with respect to Plaintiffs' prohibited transaction claim under § 1106(a); and (3) denies Defendants' motion to dismiss with respect to Plaintiffs' prohibited transaction claim under § 1106(b) and Plaintiff's claim for breach of fiduciary duties owed under § 1104(a).

---

[10] *Compare Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (finding plaintiffs' claims to have been injured by high drug costs were not redressable because plaintiffs did not claim they had been denied benefits and merely hoped plan copayments might decrease if their suit was successful), *with* Am. Compl. [#42] at 19 (alleging Plaintiffs have been denied benefits).

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss [#56] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 15th day of June 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE